GREGORY A. ASHE (VA Bar No. 39131)
BENJAMIN R. CADY (NY Bar No. 5133582)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20850
Telephone: 202-326-3719 (Ashe)
Telephone: 202-326-2939 (Cady)
Email: gashe@ftc.gov, bcady@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Federal Trade Commission**,<br><br>Plaintiff,<br><br>V.<br><br>**Accelerated Debt Settlement Inc.**, et al.,<br><br>Defendants. | Case No. 2:25-cv-02443-SMB<br><br>**FTC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS ACCELERATED DEBT SETTLEMENT INC., ADS RESOLVE LLC, FINANCIAL SOLUTIONS GROUP LLC, UNIFIED CAPITAL SERVICES LLC, MEDIAWERKS, RESOLUTION SPECIALISTS LLC, AND FUTURA CAPITAL, LLC AND MEMORANDUM IN SUPPORT THEREOF** |

## TABLE OF CONTENTS


I. PROCEDURAL BACKGROUND AND STATEMENT OF FACTS .................... 1

A. Procedural Background .................... 1

B. Summary of Defendants' Unlawful Business Practices and Defaulting Defendants' Role .................... 2

II. THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST DEFAULTING DEFENDANTS .................... 4

A. Possibility of Prejudice to Plaintiff .................... 5

B. Substantive Merits and Sufficiency of the Complaint .................... 5

C. Amount at Stake .................... 8

D. Potential Dispute as to Material Facts .................... 9

E. Possibility of Excusable Neglect .................... 9

F. Policy for Deciding on the Merits .................... 10

III. THE FTC'S PROPOSED ORDER IS REASONABLE AND APPROPRIATE .. 10

A. The FTC's Proposed Injunctive Provisions Are Appropriate .................... 10

1. Conduct Relief .................... 11

2. Monitoring Provisions .................... 14

B. The FTC's Proposed Monetary Relief is Reasonable and Appropriate .................... 15

IV. CONCLUSION .................... 17

# TABLE OF AUTHORITIES

## Cases

*Benny v. Pipes*,
799 F.2d 489 (9th Cir. 1986) .......... 4

*Danning v. Lavine*,
572 F.2d 1386 (9th Cir. 1978) .......... 5

*Davis v. Fendler*,
650 F.2d 1154 (9th Cir. 1981) .......... 8

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986) .......... 4

*FTC v. Com. Planet, Inc.*,
815 F.3d 593 (9th Cir. 2016) .......... 16

*FTC v. Elegant Sols., Inc.*,
2022 WL 2072735 (9th Cir. Jun. 9, 2022) .......... 13, 14, 15

*FTC v. Evans Prod. Co.*,
775 F.2d 1084 (9th Cir. 1985) .......... 11

*FTC v. Figgie Int'l*,
994 F.2d 595 (9th Cir. 1993) .......... 16

*FTC v. Gill*,
265 F.3d 944 (9th Cir. 2001) .......... 13

*FTC v. Grant Connect, LLC*,
763 F.3d 1094 (9th Cir. 2014) .......... 7, 12

*FTC v. Handicapped & Disabled Workshops, Inc.*,
2008 WL 4567278 (D. Ariz. Oct. 14, 2008) .......... 5, 8, 9, 10

*FTC v. Money Now Funding LLC*,
2015 WL 11120847 (D. Ariz. July 1, 2015) .......... 5, 7, 8, 9

*FTC v. Network Servs. Depot, Inc.*,
617 F.3d 1127 (9th Cir. 2010) .......... 7, 8

*FTC v. Noland*,
672 F. Supp. 3d 721 (D. Ariz. 2023) .......................................... 11, 12, 14, 15, 16

*FTC v. OMICS Grp., Inc.*,
374 F. Supp. 3d 994 (D. Nev. 2019) .......................................................... 15

*FTC v. Panda Benefit Servs.*,
2025 WL 1397160 (C.D. Cal. May 14, 2025) .................................................. 13

*FTC v. Pantron I Corp.*,
33 F.3d 1088 (9th Cir. 1994) .......................................................................... 11

*FTC v. RCG Advances, LLC*,
695 F. Supp. 3d 368 (S.D.N.Y. 2023) ............................................................. 15

*FTC v. SuperTherm Inc.*,
2021 WL 3419035 (D. Ariz. Aug. 5, 2021) ................................... 4, 5, 10, 11, 14

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) ............................................................................ 9

*HTS, Inc. v. Boley*,
954 F.Supp.2d 927 (D. Ariz. 2013) .................................................................... 8

*Roadrunner Transp. Servs., Inc. v. Tarwater*,
2012 WL 12918345 (C.D. Cal. Aug. 5, 2012) ..................................................... 8

*Sears, Roebuck & Co. v. FTC*,
676 F.2d 385 (9th Cir. 1982) ............................................................................ 12

*TeleVideo Sys., Inc. v. Heidenthal*,
826 F.2d 915 (9th Cir. 1987) .............................................................................. 4

*United States v. High Country Broad. Co., Inc.*,
3 F.3d 1244 (9th Cir. 1993) ................................................................................ 9

*United States v. Laerdal Mfg. Corp.*,
73 F.3d 852 (9th Cir. 1995) .............................................................................. 11

*United States v. W.T. Grant Co.*,
345 U.S. 629 (1953) .......................................................................................... 11

## Statutes and Rules

15 U.S.C. § 45(a) ........ 1, 6

15 U.S.C. § 53(b) ........ 6, 11

15 U.S.C. § 57b ........ 15, 16

15 U.S.C. § 1681b(f)(1) ........ 1, 6, 7

15 U.S.C. § 1692*l*(a) ........ 15

15 U.S.C. § 6821 ........ 1, 5, 6, 7, 15

15 U.S.C. § 6822 ........ 16

16 C.F.R. Part 310 ........ 1, 6

16 C.F.R. § 310.3(a)(2)(x) ........ 5, 6

16 C.F.R. § 310.4(a)(5)(i) ........ 6, 7

16 C.F.R. § 310.4(a)(9) ........ 6, 7

16 C.F.R. § 310.4(b)(1)(iii)(B) ........ 6, 7

16 C.F.R. § 310.8(a) ........ 6, 7

16 C.F.R. § 310.8(b) ........ 6, 7

16 C.F.R. Part 461 ........ 1, 5, 6, 15

16 C.F.R. § 461.2(a) ........ 7

16 C.F.R. § 461.3(a) ........ 7

Fed. R. Civ. P. 8 ........ 6

Fed. R. Civ. P. 12(a)(1)(A)(ii) ........ 2

Fed. R. Civ. P. 55(b)(2) ........ 1, 4

Plaintiff Federal Trade Commission ("FTC") respectfully moves the Court for an order entering default judgment against Defendants Accelerated Debt Settlement Inc., ADS Resolve LLC, Financial Solutions Group LLC, Unified Capital Services LLC, Mediawerks, Resolution Specialists LLC, and Futura Capital, LLC ("Defaulting Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2). The Clerk of Court entered defaults against Defaulting Defendants on February 20, 2026. (ECF No. 70.) The FTC now seeks permanent injunctive relief and monetary relief against Defaulting Defendants in the form of the proposed Default Judgment, including a monetary judgment of $108,586,567.60, lodged concurrently with this motion.

# I. PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

## A. Procedural Background

On July 14, 2025, the FTC filed a Complaint against Defaulting Defendants and Jeffrey A. Lakes, Robert Knechtel, and Elizabeth Reaney. The Complaint alleged violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310; the FTC's Trade Regulation Rule on Impersonation of Government and Businesses ("Impersonation Rule"), 16 C.F.R. Part 461; Section 604(f)(1) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f)(1); and Section 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6821, related to Defendants' deceptive marketing and sale of debt relief services. (ECF No. 2.) The FTC also sought, on an *ex parte* basis, a temporary restraining order ("TRO") with asset freeze, appointment of a receiver over Defaulting Defendants, and other equitable relief. (ECF No. 3.) The court entered the TRO that same day. (ECF No.

21.) On August 7, 2025, the Court entered a preliminary injunction against Defaulting Defendants continuing the terms of the TRO. (ECF No. 41.)

On August 11, 2025, the FTC asked Defaulting Defendants' then-counsel to waive service of a summons in this action, and on September 8, 2025, Defaulting Defendants' then-counsel agreed. (ECF Nos. 43-49.) The deadline for Defaulting Defendants to respond to the Complaint was October 10, 2025. *See* Fed. R. Civ. P. 12(a)(1)(A)(ii) (response to complaint due 60 days after request for waiver is sent). This deadline has now lapsed. Defaulting Defendants have not sought, and the Court has not granted, any motion to extend the time in which to answer or otherwise respond to the Complaint.

On December 15, 2025, this Court granted an application by Defaulting Defendants' then-counsel to withdraw and ordered Defaulting Defendants to obtain new counsel within 60 days. (ECF No. 66.) This deadline lapsed on February 13, 2026. FTC Counsel has not received any documentation or information indicating that any attorney has entered an appearance on behalf of Defaulting Defendants in this action.

On February 20, 2026, the Clerk of Court, at the FTC's request, entered default against Defaulting Defendants. (ECF No. 70.) This case is currently active only against Defaulting Defendants.[1]

**B. Summary of Defendants' Unlawful Business Practices and Defaulting Defendants' Role**

As set forth in the Complaint (ECF No. 2) as well as the FTC's memorandum in

---

[1] The FTC has reached settlements with Defendants Lakes, Knechtel, and Reaney and filed stipulated motions to enter final orders against these Defendants. (ECF Nos. 71-73.)

support of the FTC's *ex parte* application for a temporary restraining order ("TRO Memo") (ECF No. 9) and the exhibits in support thereof (PX01–PX26, ECF Nos. 4–7-2), all of which the FTC incorporates by reference here, Defaulting Defendants have deceived thousands of consumers, mostly older consumers, into paying thousands of dollars for debt relief services that are made up, not as described, or simply never materialize. Posing, first, as consumers' credit card issuers and then as various federal government agencies or consumer reporting agencies including Experian, Defaulting Defendants told consumers that their credit cards had been compromised and needed to be closed. Defaulting Defendants then marketed their services that were represented to reduce consumers' credit card debts. Defaulting Defendants, however, did not follow up on their promises, and provided little or no services at all. Thus, after paying thousands of dollars in illegal advance fees, consumers experienced no significant reduction in their unsecured debts but, instead, often found themselves deeper in debt and with worsened credit scores. Defaulting Defendants routinely called consumers on the FTC's Do Not Call list and used account information unlawfully obtained from consumers' credit reports to convince consumers that they were consumers' credit card issuers, government agencies, or consumer reporting agencies and to charge consumers thousands in illegal advance fees. (ECF No. 9 at 1.)

Defaulting Defendants operated as a common enterprise while engaging in these unlawful acts and practices. They have conducted the business practices described in the Complaint through an interrelated network of companies that have common ownership, officers, business functions, employees, managers, and office locations, and have

commingled funds. (ECF No. 9 at 5.) Consequently, each Defaulting Defendant is liable for the acts and practices alleged in the FTC's Complaint.

## II. THE COURT SHOULD ENTER DEFAULT JUDGMENT AGAINST DEFAULTING DEFENDANTS

Federal Rule of Civil Procedure 55(b)(2) enables the Court to enter a default judgment following entry of a default by the court clerk. Failure to timely answer a properly served complaint justifies entry of a default judgment. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). A court's decision to enter default judgments typically turns on seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *FTC v. SuperTherm Inc.*, 2021 WL 3419035, at *3 (D. Ariz. Aug. 5, 2021). Upon entry of default by the Clerk, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *SuperTherm*, 2021 WL 3419035, at *3.

The FTC has satisfied the procedural requirements for a default judgment. After Defaulting Defendants failed to file a timely answer or otherwise respond to the FTC's Complaint, the FTC requested entry of default (ECF No. 69), and the Clerk entered default (ECF No. 70). Therefore, the only remaining inquiry is whether the *Eitel* factors favor entry of default judgment. They do.

**A. Possibility of Prejudice to Plaintiff**

With respect to the first *Eitel* factor, the FTC will be prejudiced without a default judgment because Defaulting Defendants' failure to litigate leaves a default judgment as the only means of recovery for their law violations. *See, e.g.*, *SuperTherm*, 2021 WL 3419035, at *3 ("Prejudice to the FTC is obvious—if the motion for default judgment were denied, the FTC would be without other recourse"); *FTC v. Money Now Funding LLC*, 2015 WL 11120847, at *2 (D. Ariz. July 1, 2015); *FTC v. Handicapped & Disabled Workshops, Inc.*, 2008 WL 4567278, at *2 (D. Ariz. Oct. 14, 2008).

**B. Substantive Merits and Sufficiency of the Complaint**

The second and third *Eitel* factors are often analyzed together, *see SuperTherm*, 2021 WL 3419035, at *4, and they require that the plaintiff's allegations state a claim on which the plaintiff may recover under the "liberal pleading standards embodied in rule 8" of the Federal Rules of Civil Procedure. *See Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *SuperTherm*, 2021 WL 3419035, at *4-*6; *Money Now Funding*, 2015 WL 11120847, at *2-*4; *Handicapped & Disabled Workshops*, 2008 WL 4567278, at *2. In its Complaint, the FTC stated several claims under which the FTC may recover. The FTC alleged that Defaulting Defendants violated Section 5 of the FTC Act, Section 310.3(a)(2)(x) of the TSR, and Section 521 of the GLB Act by misrepresenting various aspects of their debt relief services. (ECF No. 2 at 19-20 ¶¶ 61-66; 25 ¶¶ 80-81, 34-35 ¶¶ 114-115.) The FTC further alleged that Defaulting Defendants violated Section 5 of the FTC Act, Section 310.3(a)(2)(x) of the TSR, Section 521 of the GLB Act, and the Impersonation Rule by misrepresenting that they are consumers' banks or credit card

issuers; the federal government; and credit bureaus. (*Id.* at 19-20 ¶¶ 64-66, 25 ¶¶ 80-81, 29-30 ¶¶ 99-102, 34-35 ¶¶ 114-115.) The FTC also alleged that Defaulting Defendants violated TSR Section 310.4(a)(5)(i) by requesting or receiving unlawful advance fees for debt relief services (*Id.* at 26 ¶¶ 84-85) and TSR Section 310.4(a)(9) through their use of remotely created checks. (*Id.* at 27 ¶¶ 88-89.) In addition, the FTC alleged that Defaulting Defendants violated TSR Section 310.4(b)(1)(iii)(B) by initiating or causing others to initiate outbound telephone calls to numbers on the Do Not Call Registry ("Registry") (*Id.* at 27 ¶¶ 90-91) and TSR Sections 310.8(a) and (b) by initiating or causing others to initiate outbound telephone calls without having paid the required fee for access to the telephone numbers on the Registry. (*Id.* at 28 ¶¶ 92-93) Further, the FTC alleged that Defaulting Defendants violated Section 604(f)(1) of the FCRA by using or obtaining consumer reports without a permissible purpose. (*Id.* at 32 ¶¶ 109-110.)

The Complaint also clearly states the grounds entitling the FTC to injunctive and monetary relief pursuant to Sections 13(b) and 19 of the FTC Act. (Id. at 2 ¶ 1.) Thus, the Complaint meets the standards of Federal Rule of Civil Procedure 8.

Moreover, the FTC's case has merit.[2] The Complaint and TRO Memo describe how Defaulting Defendants violated Section 5 of the FTC Act, Section 310.3(a)(2)(x) of

---

[2] In entering a TRO against Defendants, including Defaulting Defendants, this Court expressly found that "[t]here is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), multiple provisions of the [TSR], 16 C.F.R. Part 310, multiple provisions of the [Impersonation Rule], 16 C.F.R. Part 461, Section 604(f)(1) of the FCRA, 15 U.S.C. § 1681b(f)(1), and Section 521 of the GLB Act, 15 U.S.C. § 6821 and that the FTC is therefore likely to prevail on the merits of the action." (ECF No. 21 at 2-3.)

the TSR, Section 521(a)(2) of the GLB Act, and Sections 461.2(a) and 461.3(a) of the Impersonation Rule by misrepresenting the services they purported to offer to consumers and by misrepresenting that they were consumers' banks or credit card issuers, government agencies, and credit bureaus. (ECF No. 2 at 19-20 ¶¶ 64-66, 25 ¶¶ 80-81, 29-30 ¶¶ 99-102, 34-35 ¶¶ 114-115; ECF No. 9 at 9-37.) The Complaint and TRO Memo further explain how Defaulting Defendants violated TSR Section 310.4(a)(5)(i) by charging illegal advance fees (ECF No. 2 at 26 ¶ 84-85; ECF No. 9 at 37-43) and violated TSR Section 310.4(a)(9) through their use of remotely created checks. (ECF No. 2 at 27 ¶ 88-89; ECF No. 9 at 43-44.) In addition, the Complaint and TRO Memo describe how Defaulting Defendants violated TSR Sections 310.4(b)(1)(iii)(B), 310.8(a), and 310.8(b) by making outbound calls to consumers on the Registry and by not paying the required annual fee. Finally, the Complaint and TRO Memo explain how Defaulting Defendants violated Section 604(f)(1) of the FCRA by obtaining and using consumer credit reports without any permissible purpose. (ECF No. 2 at 32 ¶¶ 109-110; ECF No. 9 at 44-47.)

Defaulting Defendants are each liable for their own conduct and that of their business partners. Where corporate entities operate together and act as a common enterprise, each may be held liable for the deceptive acts and practices of the others. *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43 (9th Cir. 2010); *FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014); *Money Now Funding*, 2015 WL 11120847, at *4. Entities "constitute a common enterprise when they exhibit either vertical or horizontal commonality—qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues."

*Money Now Funding*, 2015 WL 11120847, at *4, *quoting Network Servs. Depot*, 617 F.3d at 1142-43. As alleged in the Complaint and further described in the TRO Memo, Defaulting Defendants acted in common enterprise to defraud consumers with their debt relief scheme. (ECF No. 2 at 9 ¶ 19; ECF No. 9 at 5-6.)

Upon entry of default by the Clerk, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true. *TeleVideo Sys.*, 826 F.2d at 917-18; *Handicapped & Disabled Workshops*, 2008 WL 4567278, at *1. In addition, as set forth above, the FTC has presented substantial evidence in support of its motion for a TRO. (See ECF No. 9 at 9-50; ECF Nos. 4–7-2.) The FTC has therefore stated a claim on which the FTC may recover.

**C. Amount at Stake**

Under the fourth *Eitel* factor, the Court considers whether the amount of money sought by the plaintiff is proportionate to defendants' conduct. *See Money Now Funding*, 2015 WL 11120847 at *4; *Handicapped & Disabled Workshops*, 2008 WL 4567278 at *2. Where the monetary judgment is liquidated, *i.e.*, capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981); *HTS, Inc. v. Boley*, 954 F.Supp.2d 927, 947 (D. Ariz. 2013). Affidavits or other documentary evidence are sufficient to evaluate the fairness of the amount requested. *Roadrunner Transp. Servs., Inc. v. Tarwater*, 2012 WL 12918345, at *9 (C.D. Cal. Aug. 5, 2012). Here, the FTC seeks a monetary judgment in the amount of $108,586,567.60, the overall harm to consumers corresponding to the net revenues that

Defaulting Defendants received from the unlawful debt relief operation. (PX01 at 3 ¶ 8 (explaining how the FTC derived this figure).) Because this amount of money is proportionate to Defaulting Defendants' conduct, and the FTC ascertained it based on documentary evidence, the fourth *Eitel* factor supports default judgment.

**D. Potential Dispute as to Material Facts**

The fifth *Eitel* factor also supports default judgment. Where a plaintiff has filed a well-pleaded complaint, defendants do not respond to plaintiff's complaint, and the court enters default, the possibility of a dispute concerning a material fact is low. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"); *Handicapped & Disabled Workshops*, 2008 WL 4567278, *2. Here, the FTC filed a well-pleaded Complaint. *See supra* Section II.B.2. Defaulting Defendants have not responded, and this Court entered default on February 20, 2026. (ECF No. 70.) None of Defaulting Defendants challenged the Clerk's entry of default. Accordingly, there is no genuine dispute of material fact that precludes default judgment.

**E. Possibility of Excusable Neglect**

Where defendants do not respond to the plantiff's complaint, do not retain counsel, and otherwise do not defend against an action, the possibility their default is due to excusable neglect is remote. *United States v. High Country Broad. Co., Inc.*, 3 F.3d 1244, 1245 (9th Cir. 1993); *Money Now Funding*, 2015 WL 11120847, *4-*5. Defaulting Defendants have had over seven months to respond to the FTC's Complaint,

which was filed on July 14, 2025 (ECF No. 2), and have not retained counsel since this Court granted their prior counsel's motion to withdraw on December 15, 2025. Defaulting Defendants have failed to defend against this action and have provided no reasons for their failure to defend. Thus, their default is not due to excusable neglect.

**F. Policy for Deciding on the Merits**

While the seventh *Eitel* factor expresses a general preference for decisions on the merits, "the existence of Rule 55(b) . . . indicates that this preference, standing alone, is not dispositive." *SuperTherm*, 2021 WL 3419035, *4 (internal quotation marks omitted). Defaulting Defendants' failure to answer or otherwise respond to the FTC's Complaint "makes a decision on the merits impractical, if not impossible." *Handicapped & Disabled Workshops*, 2008 WL 4567278, *3. Where it is not possible to adjudicate an action on the merits because a defendant refuses to participate in litigation, the strong policy favoring decisions on the merits is outweighed by the need to finalize controversies in a timely and orderly fashion. *SuperTherm*, 2021 WL 3419035, *4. Accordingly, the seventh *Eitel* factor does not preclude entry of default judgment.

* * *

In sum, the *Eitel* factors clearly support a default judgment.

**III. THE FTC'S PROPOSED ORDER IS REASONABLE AND APPROPRIATE**

For the reasons described below, the Court should enter the FTC's proposed injunctive and monetary relief.

**A. The FTC's Proposed Injunctive Provisions are Appropriate**

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), authorizes courts to grant a permanent injunction against violations of any provision of law enforced by the FTC. *FTC v. Evans Prod. Co.*, 775 F.2d 1084, 1086 (9th Cir. 1985). "This provision gives the federal courts broad authority to fashion appropriate remedies," including "any ancillary relief necessary to accomplish complete justice." *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1102 (9th Cir. 1994). The scope of the proposed conduct relief provided in the proposed final order is appropriate.

**1. Conduct Relief**

A permanent injunction is justified when there is a "cognizable danger of recurrent violation, or some reasonable likelihood of future violations." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). To determine whether violations are likely to recur, courts consider "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendants' recognition of the wrongful nature of his conduct; the extent to which the defendants' professional and personal characteristics might enable or tempt him to commit future violations; and the sincerity of any assurances against future violations." *FTC v. Noland*, 672 F. Supp. 3d 721, 806 (D. Ariz. 2023) (quoting *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854-55 (9th Cir. 1995)). *See also SuperTherm*, 2021 WL 3419035, at *6-*7 (permanent injunction warranted in light of Defendants' "systemic wrongdoing" and "pattern of misconduct").

Injunctive relief is appropriate here, as Defaulting Defendants' violations are likely to recur. First, as to scienter, there is voluminous evidence in the record that

Defaulting Defendants' senior management knew they were violating the law. (*See, e.g.*, ECF No. 37-1 (Preliminary Report of the Receiver) at 10-25.) Indeed, even after three states filed enforcement actions against one or more of Defaulting Defendants and imposed multi-million-dollar fines, Defaulting Defendants simply changed names and continued their conduct unabated. (*See id.* at 16.) Second, as to whether the violations were isolated or recurrent, Defaulting Defendants' legal violations occurred from at least 2022 to the date of the FTC's Complaint. (ECF No. 9 at 9.) Third, as to the lack of recognition of wrongdoing, Defaulting Defendants have refused to even respond in this action, much less acknowledge wrongdoing. Fourth, as to Defaulting Defendants' professional characteristics and sincerity of assurances against future violations, the Receiver concluded that Defaulting Defendants' operations were so permeated with fraud that they cannot be operated legally and profitably. (ECF No. 37-1 at 24-25.)

Where a court finds that injunctive relief is justified, it must also find that its scope is appropriate. Injunctive relief should be "framed broadly enough to prevent respondents from engaging in similarly illegal practices in [the] future." *Noland*, 672 F. Supp. at 806 (quoting *Grant Connect*, 763 F.3d at 1105). To assess the appropriate scope of injunctive relief, courts consider (1) the seriousness and deliberateness of the violation; (2) [the] ease with which the violative claim may be transferred to other products; and (3) whether the respondent has a history of prior violations." *Id.* The court looks to "the circumstances as a whole and not to the presence or absence of any single factor." *Noland*, 672 F. Supp. at 806-07, *quoting Sears, Roebuck & Co. v. FTC*, 676 F.2d 385, 392 (9th Cir. 1982).

The scope of the requested injunctive relief is appropriate. First, the violations at issue here were serious, as Defaulting Defendants defrauded consumers of more than $100 million. (PX01 at 3 ¶ 8.) The violations were also deliberate, as Defaulting Defendants' senior managers and employees were well aware that Defaulting Defendants' conduct violated the law. (*See, e.g.*, ECF No. 37-1 at 16 (Defaulting Defendants' CEO stating, "the feds will come for all involved") and 16 n.20 (sales manager noting that Defaulting Defendants' lead generators had been given "the green light to pitch fraud"). Second, Defaulting Defendants could easily shift their violative conduct to other products, in light of their history of shifting corporate identities when state regulators catch up to them. (ECF No. 9 at 6.) And third, with respect to Defaulting Defendants' history of prior violations, while the FTC has not previously filed suit against Defaulting Defendants, they have continued their actions unabated despite three state enforcement actions that imposed multi-million-dollar fines. (*Id.* at 8.) Accordingly, the scope of the requested injunctive relief is appropriate.

Sections I and II of the proposed default judgment order would ban Defaulting Defendants from marketing and selling debt relief products and services and from telemarketing. These bans are appropriate in light of the significant harm caused to thousands of consumers by Defaulting Defendants' conduct. Numerous courts in the Ninth Circuit have imposed similar bans. *See, e.g.*, *FTC v. Elegant Sols., Inc.*, 2022 WL 2072735, at *2 (9th Cir. Jun. 9, 2022) (ban on debt relief services and on telemarketing); *FTC v. Gill*, 265 F.3d 944, 957-58 (9th Cir. 2001) (ban on engaging in the credit repair business); *FTC v. Panda Benefit Servs.*, 2025 WL 1397160, *3 (C.D. Cal. May 14, 2025)

(ban on debt relief services); *Noland*, 672 F. Supp. 3d at 810-11 (ban on multi-level marketing).

The proposed order also contains provisions courts have imposed in other FTC actions to prohibit further misrepresentations and unsubstantiated claims (Section III); further false impersonation claims (Section IV); obtaining customer information by false, fictitious, or fraudulent statements or otherwise violating the GLB Act (Section V); and obtaining or using consumer credit reports without a permissible purpose (Section VI). Such provisions would require Defaulting Defendants do no more than follow the law and are routinely entered as fencing-in relief by the courts. *See, e.g.*, *Noland*, 672 F. Supp. 3d at 806, 810 (upholding, *inter alia*, bans on misrepresentations, making unsubstantiated claims, and violating the FTC's Merchandise Rule and Cooling-Off Rule); *Elegant Sols.*, 2022 WL 2072735, *2 (upholding ban on misrepresenting any fact material to consumers concerning any good or service and ban on unsubstantiated claims); *SuperTherm*, 2021 WL 3419035, *7-*8 (upholding bans on, *inter alia*, misrepresentations and unsubstantiated claims).

**2. Monitoring Provisions**

The proposed order also contains various provisions courts have imposed in other FTC actions to ensure the orders' enforceability: a provision regarding destruction of consumer information (Section IX); an order acknowledgments requirement (Section X); a compliance reporting provision (Section XI); a provision requiring maintenance of records (Section XII); and a provision permitting the FTC to monitor Defendants' compliance with the order through access to their business premises to inspect records

and interview employees, or by posing as consumers to monitor representations, or through procedures prescribed by the Federal Rules of Civil Procedure (Section XIII). These types of monitoring provisions are proper to ensure compliance with the permanent injunctive provisions discussed above. *See, e.g.*, *Noland*, 672 F. Supp. 3d at 810 (compliance and monitoring provisions were "warranted . . . in light of Defendants' track record of non-compliance with the law); *FTC v. RCG Advances, LLC*, 695 F. Supp. 3d 368, 397 (S.D.N.Y. 2023) ("The monitoring provisions are also appropriate to ensure compliance with the permanent injunction"); *FTC v. OMICS Grp., Inc.*, 374 F. Supp. 3d 994, 1014 (D. Nev. 2019) ("monitoring provisions are necessary to ensure compliance"), and 1020-21, 1022-24 (ordering similar monitoring provisions).

**B. The FTC's Proposed Monetary Relief is Reasonable and Appropriate**

Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), expressly authorizes courts to grant "such relief as the court finds necessary to redress injury to consumers" for violations of the TSR, Section 521 of the GLB Act,[3] and the Impersonation Rule, including "the refund of money or return of property." *Elegant Sols.*, 2022 WL 2072735,

---

[3] Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), empowers the FTC to enforce Section 521 of the GLB Act "in the same manner and with the same power and authority as the [FTC] has under the Fair Debt Collection Practices Act [FDCPA] . . . to enforce compliance with such Act." Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § 1692*l*(a), a violation of the FDCPA is deemed an unfair or deceptive act or practice in violation of the FTC Act. Section 814(a) of the FDCPA further provides that all of the functions and powers of the FTC under the FTC Act are available to the FTC to enforce compliance by any person with the FDCPA, including the powers to enforce the provisions of the FDCPA in the same manner as if the violation had been a violation of an FTC trade regulation rule. *Id.*

at *3 ("Section 19 expressly authorizes 'the refund of money' to remedy a violation of a rule such as the TSR."). The proper remedy under this provision is monetary redress for consumers' loss. *Id.*; *see also Noland*, 672 F. Supp. 3d at 721. This is the case regardless of whether some consumers may have received some benefit from Defendants' illegal conduct. *FTC v. Figgie Int'l*, 994 F.2d 595, 606 (9th Cir. 1993). The FTC bears the initial burden of providing the Court with a reasonable approximation of the monetary relief to award, and the burden shifts to Defaulting Defendants to demonstrate the inaccuracy or unreasonableness of the FTC's figures. *FTC v. Com. Planet, Inc.*, 815 F.3d 593, 603-04 (9th Cir. 2016). The FTC may provide a reasonable estimate, rather than an exact amount. *Noland*, 672 F. Supp. 3d at 792.

The FTC's evidence of net revenue comes from Defaulting Defendants' customer relations management platform ("CRM"). (PX01 at 2 ¶ 7.) In the three-year period prior to the filing of the FTC's Complaint, Defaulting Defendants' gross revenue was $119,756,736.51, and Defaulting Defendants paid $11,266,996.37 in chargebacks and refunds. (*Id*. at 3 ¶ 8.) Thus, Defaulting Defendants' net revenue is $108,586,567.60. (*Id*.) The proposed Default Judgment, therefore, would hold Defaulting Defendants, and any other Defendant against whom judgment has been or may be entered, jointly and severally liable for this amount.[4]

---

[4] Previous filings by the FTC and the court-appointed receiver in this case find and report slightly different revenue numbers. The difference between these previous calculations and the numbers detailed here can be explained by the use of different timeframes, as well as different and often incomplete records. The data found in Defendants' CRM,

Finally, to effectuate the proposed monetary judgment, all third parties holding assets of Defaulting Defendants would be required to turn over those assets to the receivership. The proposed order also would continue the receivership and direct the Receiver to wind up and liquidate the estate within 365 days.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant the FTC's motion for default judgment and issue the attached proposed order against Defaulting Defendants.

---

unavailable to the FTC earlier, is the most accurate data and thus was the data the FTC used for the calculations detailed here. (PX01 at ¶ 7 n.1.)

Dated: March 23, 2026

Respectfully submitted,

*/s/Benjamin R. Cady*
GREGORY A. ASHE (VA Bar No. 39131)
BENJAMIN R. CADY (NY Bar No. 5133582)
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20850
Telephone: 202-326-3719 (Ashe)
Telephone: 202-326-2939 (Cady)
Email: gashe@ftc.gov, bcady@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 23, 2026, the foregoing **FTC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS ACCELERATED DEBT SETTLEMENT INC., ADS RESOLVE LLC, FINANCIAL SOLUTIONS GROUP LLC, UNIFIED CAPITAL SERVICES LLC, MEDIAWERKS, RESOLUTION SPECIALISTS LLC, AND FUTURA CAPITAL, LLC AND MEMORANDUM IN SUPPORT THEREOF** was filed via CM/ECF, which will automatically serve such filing to all parties of record registered with the court's electronic filing system.

The undersigned further certifies that on March 23, 2026, the foregoing **FTC'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS ACCELERATED DEBT SETTLEMENT INC., ADS RESOLVE LLC, FINANCIAL SOLUTIONS GROUP LLC, UNIFIED CAPITAL SERVICES LLC, MEDIAWERKS, RESOLUTION SPECIALISTS LLC, AND FUTURA CAPITAL, LLC AND MEMORANDUM IN SUPPORT THEREOF** was also served via email on the following parties who are not registered with the court's electronic filing system:

Elizabeth Reaney, Defendant *pro se*
Robert Knechtel, Defendant *pro se*

Joel Hirschhorn, Esq.
*Attorney for Defendant Jeffrey Lakes*

*/s/ Benjamin R. Cady*
Attorney for Plaintiff Federal Trade Commission