**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| **Federal Trade Commission**,<br><br>Plaintiff,<br><br>v.<br><br>**Accelerated Debt Settlement Inc.**, et al.,<br><br>Defendants. | Case No. 2:25-cv-02443-SMB<br><br>**[proposed] DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AS TO DEFENDANTS ACCELERATED DEBT SETTLEMENT INC., ADS RESOLVE LLC, FINANCIAL SOLUTIONS GROUP LLC, UNIFIED CAPITAL SERVICES LLC, MEDIWERKS, RESOLUTION SPECIALISTS LLC, AND FUTURA CAPITAL, LLC** |

Plaintiff, the Federal Trade Commission ("FTC"), commenced this civil action on July 14, 2025, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6105(b), Section 621(a) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a), and Section 522(a) of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6822(a). (ECF No. 14.) On July 14, 2025, on motion by the FTC, the Court entered an *ex parte*

temporary restraining order with asset freeze, appointment of a receiver, other equitable relief against Defendants ("TRO"). (ECF No. 21.) On August 8, 2025, the Court entered a Stipulated Preliminary Injunction ("Preliminary Injunction") against Defendants. (ECF No. 41.)

On February 20, 2026, pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered default against Defendants Accelerated Debt Settlement Inc., ADS Resolve LLC, Financial Solutions Group LLC, Unified Capital Services LLC, Mediwerks, Resolution Specialists LLC, and Futura Capital ("Defaulting Defendants"). (ECF No. 70.) The FTC has now moved this Court for entry of a judgment by default and permanent injunction, pursuant to Federal Rule of Civil Procedure 55(b)(2), against Defaulting Defendants.

The Court, having considered the memoranda and exhibits filed in support of said motion, and all other pleadings and files in this action, and now being fully advised in the premises, **GRANTS** the FTC's motion and makes the following findings of law and fact.

**FINDINGS**

1. The FTC brings this action pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a), and Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a). The FTC seeks both permanent injunctive and monetary relief for deceptive and unlawful acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, the FTC's Trade Regulation Rule on Impersonation of Government and

Businesses ("Impersonation Rule"), 16 C.F.R. Part 461, Section 604(f)(1) of the FCRA, 15 U.S.C. § 1681b(f)(1), and Section 521 of the GLB Act, 15 U.S.C. § 6821), by Defaulting Defendants in connection with the marketing and sale of debt relief services.

2. The FTC has authority under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a), and Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), to seek the relief it has requested, and the Complaint states a claim upon which can be granted against Defaulting Defendants.

3. This Court has jurisdiction over the subject matter of this action and personal jurisdiction over Defaulting Defendants pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 1681s(a), 6105(b), and 6822(a). Venue in the District of Arizona is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b) and (c).

4. On September 8, 2025, each Default Defendant waived service of summons and Complaint. (ECF Nos. 43, 44, 45, 46, 47, 48, and 49.)

5. The time within which Default Defendants could answer, plead, or otherwise defend against the Complaint has expired.

6. The time for Defaulting Defendants to answer, plead, or otherwise defend against the Complaint has not been extended.

7. The Court is not aware that any Defaulting Defendant has filed for bankruptcy.

8. None of Defaulting Defendants have filed an answer or otherwise responded to the Complaint.

9. The Clerk of Court entered Defaulting Defendants' default on February 20, 2026. (ECF No. 70.)

10. Because of Defaulting Defendants' default, the allegations in the Complaint filed in this action are taken as true.

11. The FTC is an agency of the United States Government created by the FTC Act, which authorizes the FTC to commence this district court civil action by its own attorneys. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices in or affecting commerce. The FTC also enforces the Impersonation Rule, 16 C.F.R. Part 461, which prohibits the impersonation of the government and businesses. The FTC also enforces the FCRA, 15 U.S.C. §§ 1681-1681x, which protects the privacy of consumer information by limiting the provision and use of consumer credit reports. The FTC also enforces Section 521(a) of the GLB Act, 15 U.S.C. § 6821(a), which prohibits obtaining a person's financial information by making false, fictitious, or fraudulent statements.

12. Defendant Accelerated Debt Settlement Inc. is a Wyoming corporation with its principal place of business at 3922 E University Drive, Suite 6, Phoenix, Arizona. It

is also registered as a foreign corporation in Pennsylvania, Colorado, Utah, Arizona, Florida, Massachusetts, and Mississippi. Accelerated Debt also does business as Accelerated Debt Solutions and ADS Resolve. Accelerated Debt transacts or has transacted business in this district and throughout the United States. At all times relevant to the Complaint, acting alone or in concert with others, Accelerated Debt has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

13. Defendant ADS Resolve LLC is a Nevada limited liability company with its principal place of business at 3922 E University Drive, Suite 6, Phoenix, Arizona. ADS Resolve transacts or has transacted business in this district and throughout the United States. At all times relevant to the Complaint, acting alone or in concert with others, ADS Resolve has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

14. Defendant Financial Solutions Group LLC is a Delaware limited liability company with its principal place of business at 3922 E University Drive, Suite 6, Phoenix, Arizona. It is registered as a foreign limited liability company in Massachusetts, Mississippi, New Hampshire, Utah, Vermont, Indiana, Pennsylvania, Wisconsin, and Michigan. Financial Solutions also does business as Accelerated Debt Settlement LLC and Accelerated Debt Solutions LLC. Financial Solutions transacts or has transacted business in this district and throughout the United States. At all times relevant to the Complaint, acting alone or in concert with others, Financial Solutions

has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

15. Defendant Unified Capital Services LLC is a South Dakota limited liability company with its principal place of business at 3922 E University Drive, Suite 6, Phoenix, Arizona. Unified Capital is formerly known as Alternative Industrial Services, LLC. Unified Capital also does business as Unified Debt. Unified Capital transacts or has transacted business in this district and throughout the United States. At all times relevant to the Complaint, acting alone or in concert with others, Unified Capital has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

16. Defendant Mediawerks is a Wyoming corporation with its principal place of business at 3922 E University Drive, Suite 6, Phoenix, Arizona. Mediawerks transacts or has transacted business in this district and throughout the United States. At all times relevant to the Complaint, acting alone or in concert with others, Mediawerks has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

17. Defendant Resolution Specialists LLC is a Nevada limited liability company with its principal place of business at 3922 E University Drive, Suite 6, Phoenix, Arizona. Resolution Specialists transacts or has transacted business in this district and throughout the United States. At all times relevant to the Complaint, acting alone or in concert with others, Resolution Specialists has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

18. Defendant Futura Capital, LLC is a Nevada limited liability company with its principal place of business at 3922 E University Drive, Suite 6, Phoenix, Arizona. Futura Capital transacts or has transacted business in this district and throughout the United States. At all times relevant to the Complaint, acting alone or in concert with others, Futura Capital has advertised, marketed, distributed, or sold debt relief services to consumers throughout the United States.

19. Defaulting Defendants have operated as a common enterprise while engaging in the unlawful acts and practices described below. They have conducted the business practices described in the Complaint through an interrelated network of companies that have common ownership, officers, business functions, employees, managers, and office locations, and have commingled funds. Because Defaulting Defendants have operated as a common enterprise, each Defaulting Defendant is liable for the acts and practices alleged below.

20. At all times relevant to the Complaint, Defaulting Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

21. Defaulting Defendants have deceived thousands of consumers, mostly older consumers, into paying thousands of dollars for debt relief services that are made up, not as described, or simply never materialize. Posing, first, as consumers' credit card issuers and then as various federal government agencies or consumer reporting agencies including Experian, Defaulting Defendants told consumers that their credit cards had been compromised and needed to be closed. Defaulting Defendants then

marketed their services that were represented to reduce consumers' credit card debts. Defaulting Defendants, however, did not follow up on their promises, and provided little or no services at all. Thus, after paying thousands of dollars in illegal advance fees, consumers experienced no significant reduction in their unsecured debts but, instead, often found themselves deeper in debt and with worsened credit scores. Defaulting Defendants routinely used account information unlawfully obtained from consumers' credit reports to convince consumers that they were consumers' credit card issuers, government agencies, or consumer reporting agencies and to charge consumers thousands in illegal advance fees. In addition, in the course of their telemarketing, Defaulting Defendants routinely called consumers on the FTC's Do Not Call list.

22. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defaulting Defendants represented, directly or indirectly, expressly or by implication, that (a) Defendants' debt relief services would reduce consumer debts substantially; (b) the upfront fee that Defendants charged to consumers' credit cards was part of the overall debt that Defendants would reduce or eliminate, and therefore consumers would not actually have to pay this fee; and (c) any negative effect on consumers' credit scores was temporary, and consumers' credit scores would improve or return to normal after the completion of Defendants' services. In fact, in numerous instances in which Defaulting Defendants have made these representations, such representations were false or misleading or were not substantiated at the time the representations were

made. Therefore, these representations are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, Defaulting Defendants have violated Section 5 of the FTC Act as alleged in Count I of the Complaint.

23. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defaulting Defendants represented, directly or indirectly, expressly or by implication, that (a) Defendants were consumers' banks or credit card issuers; (b) Defendants were the federal government, including specifically the Social Security Administration and the Consumer Financial Protection Bureau; and (c) Defendants were consumer reporting agencies, including specifically Experian. In fact, in numerous instances in which Defaulting Defendants have made these representations (a) Defendants were not consumers' banks or credit card issuers; (b) Defendants were not the federal government, including specifically the Social Security Administration and the Consumer Financial Protection Bureau; and (c) Defendants were not consumer reporting agencies, including specifically Experian. Therefore, these representations are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a). Accordingly, Defaulting Defendants have violated Section 5 of the FTC Act as alleged in Count II of the Complaint.

24. In numerous instances, in connection with the telemarketing of debt relief services, Defaulting Defendants misrepresented, directly or indirectly, expressly or by implication, material aspects of their debt relief services, including, but not limited to,

that (a) Defendants' debt relief services would reduce consumer debts substantially; (b) the upfront fee that Defendants charged to consumers' credit cards was part of the overall debt that Defendants would reduce or eliminate, and therefore consumers would not actually have to pay this fee; (c) any negative effect on consumers' credit scores was temporary, and consumers' credit scores would improve or return to normal after the completion of Defendants' services; (d) Defendants were consumers' banks or credit card issuers; (e) Defendants were the federal government, including specifically the Social Security Administration and the Consumer Financial Protection Bureau; and (f) Defendants were consumer reporting agencies, including specifically Experian. These acts or practices are deceptive telemarketing acts and practices that violate Section 310.3(a)(2)(x) of the TSR, 16 C.F.R. § 310.3(a)(2)(x). Accordingly, Defaulting Defendants have violated Section 310.3(a)(2)(x) of the TSR as alleged in Count III of the Complaint.

25. In numerous instances, in connection with the telemarketing of debt relief services, Defaulting Defendants failed to disclose, in a clear and conspicuous manner, that their debt relief services—which directed consumers to stop making timely payments to their credit card companies—would likely adversely affect consumers' creditworthiness. These acts or practices are deceptive telemarketing acts and practices that violate Section 310.3(a)(1)(viii)(C) of the TSR, 16 C.F.R. § 310.3(a)(1)(viii)(C). Accordingly, Defaulting Defendants have violated Section 310.3(a)(1)(viii)(C) of the TSR as alleged in Count IV of the Complaint.

26. In numerous instances, in connection with the telemarketing of debt relief services, Defaulting Defendants requested or received payment of a fee or consideration for debt relief services when (a) Defendants had not renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (b) the customer had not made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor; and (c) the fee (i) did not bear the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bore to the entire debt amount, and/or (ii) wass not a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. These acts or practices are abusive telemarketing acts and practices that violate Section 310.4(a)(5)(i) of the TSR, 16 C.F.R. § 310.4(a)(5)(i). Accordingly, Defaulting Defendants have violated Section 310.4(a)(5)(i) of the TSR as alleged in Count V of the Complaint.

27. In numerous instances, in connection with the telemarketing of debt relief services, Defaulting Defendants initiated, or caused others to initiate, outbound telephone calls that failed to transmit the telephone number and name of the telemarketer or seller to any caller identification service in use by a recipient of a telemarketing call. These acts or practices are abusive telemarketing acts and practices that violate Section 310.4(a)(8) of the TSR, 16 C.F.R. § 310.4(a)(8). Accordingly, Defaulting Defendants have violated Section 310.4(a)(8) of the TSR as alleged in Count VI of the Complaint.

28. In numerous instances, in connection with the telemarketing of debt relief services, Defaulting Defendants created or caused to be created, directly or indirectly, a remotely created payment order as payment for debt relief services. These acts or practices are abusive telemarketing acts and practices that violate Section 310.4(a)(9) of the TSR, 16 C.F.R. § 310.4(a)(9). Accordingly, Defaulting Defendants have violated Section 310.4(a)(9) of the TSR as alleged in Count VII of the Complaint.

29. In numerous instances, in connection with the telemarketing of debt relief services, Defaulting Defendants initiated, or caused others to initiate, an outbound telephone call to a person's telephone number on the National Do Not Call Registry. These acts or practices are abusive telemarketing acts and practices that violate Section 310.4(b)(1)(iii)(B) of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B). Accordingly, Defaulting Defendants have violated Section 310.4(b)(1)(iii)(B) of the TSR as alleged in Count VIII of the Complaint.

30. In numerous instances, in connection with the telemarketing of debt relief services, Defaulting Defendants initiated, or caused others to initiate, outbound telephone calls to persons within a given area code without having paid, directly or through another person, the annual fee required by Section 310.8(c) of the TSR for access to telephone numbers within that area code that are included in the Registry. These acts or practices are telemarketing acts and practices that violate Section 310.8(a) of the TSR, 16 C.F.R. § 310.8(a). Accordingly, Defaulting Defendants have violated Section 310.8(a) of the TSR as alleged in Count IX of the Complaint.

31. In numerous instances on or after April 1, 2024, in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defaulting Defendants materially and falsely posed as, directly or by implication, a government entity, including specifically the Social Security Administration and the Consumer Financial Protection Bureau. These representations are unfair or deceptive acts or practices that violate Section 461.2(a) of the Impersonation Rule, 16 C.F.R. § 461.2(a). Accordingly, Defaulting Defendants have violated Section 461.2(a) of the Impersonation Rule as alleged in Count X of the Complaint.

32. In numerous instances on or after April 1, 2024, in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defaulting Defendants materially and falsely posed as, directly or by implication, a business, including specifically consumers' credit card issuing banks and/or consumer reporting agencies such as Experian. These representations are unfair or deceptive acts or practices that violate Section 461.3(a) of the Impersonation Rule, 16 C.F.R. § 461.3(a). Accordingly, Defaulting Defendants have violated Section 461.3(a) of the Impersonation Rule as alleged in Count XI of the Complaint.

33. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defaulting Defendants used or obtained consumer reports without a purpose for which the consumer reports were authorized to be furnished under Section 604 of the FCRA. These acts and practices that violate Section 604(f)(1) of the FCRA, 15 U.S.C. § 1681b(f)(1). Accordingly,

Defaulting Defendants have violated Section 604(f)(1) of the FCRA as alleged in Count XII of the Complaint.

34. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defaulting Defendants made false, fictitious, or fraudulent statements or representations to customers of financial institutions to obtain or attempt to obtain customer information of a financial institution of those customers, such as bank account numbers and routing numbers, including by representing, directly or indirectly, expressly or by implication, that (a) Defendants' debt relief services would reduce consumer debts substantially; (b) the upfront fee that Defendants charged to consumers' credit cards was part of the overall debt that Defendants would reduce or eliminate, and therefore consumers would not actually have to pay this fee; (c) any negative effect on consumers' credit scores was temporary, and consumers' credit scores would improve or return to normal after the completion of Defendants' services; (d) Defendants were consumers' banks or credit card issuers; (e) Defendants were the federal government, including specifically the Social Security Administration and the Consumer Financial Protection Bureau; and (f) Defendants were consumer reporting agencies, including specifically Experian. These acts and practices that violate Section 521(a) of the GLB Act, 15 U.S.C. § 6821(a). Accordingly, Defaulting Defendants have violated Section 521(a) of the GLB Act as alleged in Count XIII of the Complaint.

35. A court's decision to enter default judgments typically turns on seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the claims; (3) the sufficiency

of the complaint; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the policy favoring a decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

36. Here, the *Eitel* factors support entry of a default judgment. Regarding the first factor, the FTC will be prejudiced without a default judgment because there is no other way to litigate its claims against Defaulting Defendants, who have failed to answer or otherwise respond to the FTC's Complaint.

37. With respect to the second and third factors, the FTC's Complaint clearly states the grounds entitling the FTC to injunctive and monetary relief pursuant to Sections 13(b) and 19 of the FTC Act. Moreover, the FTC's case has merit. Accepting that the factual allegations of the Complaint are taken as true, not to mention the considerable evidence presented by the FTC in support of its motion for temporary restraining order, the FTC has established that Defaulting Defendants, acting in common enterprise, engaged in unlawful practices in violation of Section 5 of the FTC Act, the TSR, the Impersonation Rule, the FCRA, and Section 521 of the GLB Act.

38. Regarding the fourth *Eitel* factor, the amount of money at stake, the FTC seeks a monetary judgment against Defaulting Defendants in the amount of $108,586,567.60, representing the overall harm to consumers calculated from net revenue. This figure is entirely commensurate with the gravity of Defaulting Defendants' violations while also considering their roles in the scheme.

39. The fifth *Eitel* factor, the possibility of a dispute concerning material facts, also weighs in favor of default judgment. None of Defaulting Defendants have entered an appearance or made any formal filing disputing any of the FTC's allegations, nor have any Defaulting Defendants challenged the Clerk's entry of default. Accordingly, there is no genuine dispute of material fact that precludes default judgment.

40. The possibility that default was due to excusable neglect, the sixth *Eitel* factor, is remote. Despite having had ample time and opportunity to make an appearance, Defaulting Defendants have failed to defend against this action and to date have provided no reasons for their failure to defend. Thus, their default is not due to excusable neglect.

41. Finally, although the seventh *Eitel* factor expresses a general preference for decisions on the merits, where it is impossible to adjudicate an action on the merits because a defendant refuses to participate in litigation, the strong policy favoring decisions on the merits is outweighed by the need to finalize controversies in a timely and orderly fashion as well as by the public policy favoring judicial economy. Accordingly, the seventh *Eitel* factor does not preclude entry of default judgment.

42. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), authorizes this Court to grant injunctive relief as the Court may deem appropriate to halt violations of any provision of law enforced by the FTC.

43. Consumers have suffered and will continue to suffer substantial injury as a result of Defaulting Defendants' violations of Section 5 of the FTC Act, the TSR, the Impersonation Rule, the FCRA, and Section 521 of the GLB Act. The Court finds

that, absent a permanent injunction, Defaulting Defendants are likely to continue to engage in the activities alleged in the Complaint.

44. The Court is persuaded that the danger of future violations by Defaulting Defendants justifies the issuance of permanent injunctive relief. Specifically, it is proper in this case to issue a permanent injunction that: (a) bans Defaulting Defendants from marketing or selling debt relief products or services; (b) bans Defaulting Defendants from engaging in telemarketing; (c) prohibits Defaulting Defendants from using false, fictitious, or fraudulent statements to obtain or attempt to obtain customer information of a financial institution; (d) prohibits Defaulting Defendants from impersonating or falsely representing affiliation with any government entity or business; (e) prohibits Defaulting Defendants from using or obtaining consumer reports without a permissible purpose; (f) provides other reasonable fencing-in relief; and (g) provides such other ancillary relief as is necessary to assist the FTC and the Court in monitoring Defaulting Defendants' compliance with such a permanent injunction.

45. Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 522(a) of the GLB Act, 15 U.S.C. § 6822(a), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defaulting Defendants' violations of the TSR, Section 521 of the GLB Act, and the Impersonation Rule, including but not limited to refund of money or return of property.

46. No hearing is necessary for the Court to make a determination with respect to monetary relief, as such relief is established through undisputed evidence already submitted to the Court. That evidence demonstrates that Defaulting Defendants have

caused $108,586,567.60 in consumer harm from their violations of the TSR, Section 521 of the GLB Act, and the Impersonation Rule, in the three years prior to the FTC's filing of the Complaint.

47. It is proper in this case to enter a monetary judgment, pursuant to Section 19 of the FTC Act, 15 U.S.C. § 57b, against Defaulting Defendants to redress consumer injury caused by Defaulting Defendants' violations of the TSR, Section 521 of the GLB Act, and the Impersonation Rule. The FTC is entitled to judgment against Defaulting Defendants in the amount of $108,586,567.60.

48. It is proper in this case to continue the receivership over Defaulting Defendants.

49. This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

50. Pursuant to Federal Rule of Civil Procedure 65(d), the provisions of this Order are binding upon each Defaulting Defendant, their successors and assigns, and their officers, agents, employees, and attorneys, and upon those persons orentities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

51. Entry of this Order is in the public interest.

**DEFINITIONS**

For purposes of this Order, the following definitions shall apply:

A. "**Consumer**" means any Person.

B. "**Debt Relief Product or Service**" means:

1. With respect to any mortgage, loan, debt, or obligation between a Person and one or more secured or unsecured creditors or debt collectors, any Product or Service represented, expressly or by implication, to:

   a. stop, prevent, or postpone any mortgage or deed of foreclosure sale for a Person's dwelling, any other sale of collateral, any repossession of a Person's dwelling or other collateral, or otherwise save a Person's dwelling or other collateral from foreclosure or repossession;

   b. negotiate, obtain, or arrange a modification, or renegotiate, settle, reduce, or in any way alter any terms of the mortgage, loan, debt, or obligation, including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a Person to a secured or unsecured creditor or debt collector;

   c. obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation;

   d. negotiate, obtain, or arrange any extension of the period of time within which a Person may (i) cure his or her default on the mortgage, loan, debt, or obligation, (ii) reinstate his or her mortgage, loan, debt, or obligation, (iii) redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

   e. obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

f. negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder;

The foregoing shall include any manner of claimed assistance, including auditing or examining a Person's application for the mortgage, loan, debt, or obligation.

2. With respect to any loan, debt, or obligation between a Person and one or more unsecured creditors or debt collectors, any Product or Service represented, expressly or by implication, to:

a. repay one or more unsecured loans, debts, or obligations; or

b. combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

C. "**Defaulting Defendants**" means Accelerated Debt Settlement Inc. also doing business as Accelerated Debt Solutions and ADS Resolve; ADS Resolve LLC; Financial Solutions Group LLC also doing business as Accelerated Debt Settlement LLC and Accelerated Debt Solutions LLC; Unified Capital Services LLC formerly known as Alternative Industrial Services, LLC and also doing business as Unified Debt; Mediwerks; Resolution Specialists LLC; Futura Capital, LLC; and each of their subsidiaries, affiliates, successors, and assigns.

D. "**Defendants**" means Defaulting Defendants and Individual Defendants, individually, collectively, or in any combination.

E. "**Individual Defendants**" means Jeffrey A. Lakes, Robert L. Knechtel, and Elizabeth A. Reaney.

F. "**Person**" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

G. **"Product or Service"** means any product, good, or service, including any plan or program.

H. "**Receiver**" means Thomas W. McNamara.

I. "**Receivership Entity**" means Defaulting Defendants, as well as any other entity that has conducted any business related to Defendants' debt relief services business, including receipt of assets derived from any actitivty that is the subject of the Complaint in this matter, and which the Receiver has reason to believe is owned or controlled in whole or in party by any Defaulting Defendant, including, but not limited to Del Lagos Charitable Fund, Inc., Clear Bridge Company, LLC, and Bright Day Services, LLC.

J. "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of any Product or Service by use of one or more telephones, and which involves more than one interstate telephone call.

**ORDER**

**BAN ON DEBT RELIEF PRODUCTS AND SERVICES**

**I. IT IS THEREFORE ORDERED** that Defaulting Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from:

A. Advertising, marketing, promoting, offering for sale, or selling any Debt Relief Product or Service; and

B. Assisting others in the advertising, marketing, promoting, offering for sale, or selling any Debt Relief Product or Service.

**BAN ON TELEMARKETING**

**II. IT IS FURTHER ORDERED** that Defaulting Defendants, whether directly or through an intermediary, are permanently restrained and enjoined from participating in Telemarketing.

**PROHIBITED BUSINESS ACTIVITIES**

**III. IT IS FURTHER ORDERED** that Defaulting Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, distributing, servicing, offering, or selling any Product or Service, are permanently restrained and enjoined from engaging in, or assisting others engaged in, the following:

A. Misrepresenting, expressly or by implication:

1. Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a Consumer

obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the Consumer;

2. The nature, expertise, position, or job title of any Person who provides any Product or Service;

3. The ability to improve or otherwise affect a Consumer's credit record, credit history, credit rating, or ability to obtain credit, including that a Consumer's credit record, credit history, credit rating, or ability to obtain credit can be improved by permanently removing negative information from the Consumer's credit record or history even where such information is accurate and not obsolete;

4. That a Consumer will save money;

5. Any benefit of such Product or Service;

6. Any requirements for obtaining such Product or Service;

7. The existence, amount, or timing of any fees or charges, or the total cost to purchase, receive, or use such Product or Service; or

8. Any other fact material to Consumers concerning any Product or Service, such as: any material restrictions, limitations, or conditions to purchase, receive, or use such Product or Service; or any material aspect of the performance, efficacy, nature, or central characteristics of such Product or Service; or

B. Making any representation, expressly or by implication, about the benefits, performance, or efficacy of any Product or Service, unless the representation is non-misleading, including that, at the time such representation is made, Defaulting

Defendants possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true.

**INJUNCTION RELATING TO IMPERSONATING ANY GOVERNMENT ENTITY, BUSINESS, OR PERSON**

**IV. IT IS FURTHER ORDERED** that Defaulting Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A. Falsely posing as or assisting others in falsely posing as, directly or by implication, any Person; government entity; public, non-profit, or other non-commercial program; or any other program, including any bank, credit card issuer, or consumer reporting agency;

B. Misrepresenting or assisting others in misrepresenting, expressly or by implication, that any Person is affiliated with, endorsed, sponsored by, or approved by, or otherwise connected to any other Person; government entity; public, non-profit, or other non-commercial program; or any other program; or

C. Violating the FTC's Impersonation Rule, 16 C.F.R. Part 461, a copy of which is attached.

**INJUNCTION RELATING TO CONSUMER INFORMATION**

**V. IT IS FURTHER ORDERED** that Defaulting Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A. Making any false, fictitious, or fraudulent statement or representation to any Person to obtain or attempt to obtain information of a Consumer, including, but not limited to, credit or debit card numbers, bank account numbers and routing numbers, and Consumer credit reports; or

B. Violating the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801-6809, §§ 6821-6827, a copy of which is attached.

**INJUNCTION RELATING TO CONSUMER CREDIT REPORTS**

**VI. IT IS FURTHER ORDERED** that Defaulting Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby permanently restrained and enjoined from:

A. Obtaining or using any Person's Consumer credit report without having a permissible purpose;

B. Misrepresenting to any Person the purpose for which any Person's Consumer credit report is being obtained or used;or

C. Violating the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, a copy of which is attached.

**CONTINUATION OF RECEIVERSHIP**

**VII.** IT IS FURTHER ORDERED that Thomas McNamara, Esq. shall continue as a permanent receiver over the Receivership Entities with full powers of a permanent receiver, including but not limited to those powers set forth in the Preliminary Injunction, and including full liquidation powers. The Receiver is directed to wind up the Receivership Entities and liquidate all assets within 365 days after entry of this Order. Any party or the Receiver may request that the Court extend the Receiver's term for good cause. Upon termination of the receivership and final payment to the Reciever of all approved fees, costs, and expenses, the Receiver shall turn over to the FTC or its designated agent all remaining assets in the receivership estate.

**MONETARY JUDGMENT**

**VIII. IT IS FURTHER ORDERED** that:

A. Judgment in the amount of ONE HUNDRED AND EIGHT MILLION, FIVE HUNDRED AND EIGHTY-SIX THOUSAND, FIVE HUNDRED, AND SIXTY-SEVEN Dollars and SIXTY Cents ($108,586,567.60) is entered in favor of the FTC against Defaulting Defendants, jointly and severally with any other Defendant against whom judgment may be entered, as monetary relief pursuant to Section 19 of the FTC Act, 15 U.S.C. § 57b, for Defaulting Defendants' violations of the TSR, the Impersonation Rule, and Section 521(a) of the GLB Act.

B. The monetary judgment set forth in Section VIII.A is enforceable against any assets, real or personal, whether located within the United States or outside the United States, owned jointly or singly by, on behalf of, for the benefit of, in trust by or for, or as a deposit for future goods or services to be provided to, any Defaulting Defendant, whether held as tenants in commons, joint tenants with or without the right of survivorship, tenants by the entirety, and/or community property.

C. In partial satisfaction of the judgment set forth in Section VIII.A, any Defendant, financial institution, or any other Person, whether located within the United States or outside the United States, that holds, controls, or maintains assets or accounts in the name of, on behalf of, for the benefit of, in trust by or for, or as a deposit for future goods or services to be provided to, any Receivership Entity shall, within ten (10) business days of receipt of a copy of this Order by any means, transfer to the Receiver or his designated agent such account or asset, including, but not limited to the following assets:

1. Del Lagos Charitable Fund, Inc. shall, within 30 days after the date of entry of this Order, transfer to the Receiver title to (a) the real property located at 256 Hamilton Hill, Sandpoint, Idaho, (b) the 2022 Toyota Tundra TRO 4x4 Sport (VIN xxxx9148), (c) the Yamaha Wolverine RMAX44 1000 XTR Sidewinder, and (d) the 2023 Regal LS36 boat. Del Lagos Charitable Fund shall cooperate, and cause its officers and agents to cooperate fully, with the Receiver and shall execute, or cause its officers and agents to execute, any instrument or

document presented by the Receiver, and do whatever else the Receiver deems necessary or desirable to effect such transfers. Upon such transfers, the property shall be assets of the receivership estate subject to the provisions relating to the Receiver set forth in this Order, the Preliminary Injunction, or any subsequent order relating to the duties and functions of the Receiver;

2. Monarch Defender LLC shall, within ten (10) business days of receipt of a copy of this Order by any means, transfer to the Receiver or his designated agent all monies paid by Futura Capital, LLC or any other Defendant or Receivership Entity as a deposit, down payment, or otherwise for a Monarch Defender to be delivered to Futura Capital, LLC, Jeffrey Lakes, or any other Defendant or Receivership Entity, including but not limited to the payment of $112,356 by Futura Capital to Monarch Defender LLC;

3. Defendant Jeffrey Lakes and Lori J. Lakes shall cooperate fully with the Receiver and shall execute any instrument or document presented by the Receiver and do whatever else the Receiver deems necessary or desirable to effect the sale, resale, or transfer of the contract for lodging rights and services and/or any other contract or agreement related to or associated with the timeshare with Grupo Vidanta's (also known as Vida Vacations) The Estates that was purchased by Financial Solutions Group, with the proceeds of such sale, resale, or transfer being transferred to the Receiver or his designated agent;

D. The asset freeze is modified to permit the transfers and liquidations identified in this Section.

E. Defaulting Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

F. All money received by the FTC pursuant to this Order may be deposited into a fund administered by the FTC or its designee to be used for Consumer relief, such as redress and any attendant expenses for the administration of any redress fund. If a representative of the FTC decides that direct redress to Consumers is wholly or partially impracticable or money remains after such redress is completed, the FTC may apply any remaining money for such related relief (including Consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Defaulting Defendants have no right to challenge any actions the FTC or its representatives may take pursuant to this Subsection.

**CUSTOMER INFORMATION**

**IX.** **IT IS FURTHER ORDERED** that Defaulting Defendants, their officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order are permanently restrained and enjoined from directly or indirectly:

A. Failing to provide sufficient customer information to enable the FTC to efficiently administer Consumer redress. If a representative of the FTC requests in writing

any information related to redress, Defaulting Defendants must provide it, in the form prescribed by the FTC, within 14 days;

B. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained prior to entry of this Order in connection with the marketing and sale of Debt Relief Products or Services; and

C. Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the FTC.

D. Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

**ORDER ACKNOWLEDGMENTS**

**X.** **IT IS FURTHER ORDERED** that Defaulting Defendants obtain acknowledgments of receipt of this Order:

A. Each Defaulting Defendant, within 7 days of entry of this Order, must submit to the FTC an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 5 years after entry of this Order, each Defaulting Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and

members; (2) all employees having managerial responsibilities for conduct specified in Sections I–VI and all agents and representatives who participate in conduct specified in Sections I–VI; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which a Defaulting Defendant delivered a copy of this Order, such Defaulting Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

**COMPLIANCE REPORTING**

**XI.** **IT IS FURTHER ORDERED** that Defaulting Defendants make timely submissions to the FTC:

A. One year after entry of this Order, each Defaulting Defendant must submit a compliance report, sworn under penalty of perjury. Each Defaulting Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the FTC may use to communicate with such Defaulting Defendant; (b) identify all of such Defaulting Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant; (d) describe in detail whether and how each Defaulting Defendant is in compliance with each

Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the FTC.

B. For 20 years after entry of this Order, each Defaulting Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following: (1) any designated point of contact; or (2) the structure of such Defaulting Defendant or any entity that such Defaulting Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C. Each Defaulting Defendant must submit to the FTC notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defaulting Defendant within 14 days of its filing.

D. Any submission to the FTC required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a FTC representative in writing, all submissions to the FTC pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600

Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Accelerated Debt Settlement LLC, Matter No. X250035.

## RECORDKEEPING

XII. **IT IS FURTHER ORDERED** that Defaulting Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, each Defaulting Defendant must create and retain the following records:

A. accounting records showing the revenues from all goods or services sold;

B. personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C. records of all Consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D. all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the FTC; and

E. a copy of each unique advertisement or other marketing material.

## COMPLIANCE MONITORING

XIII. **IT IS FURTHER ORDERED** that, for the purpose of monitoring Defaulting Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A. Within 14 days of receipt of a written request from a representative of the FTC, each Defaulting Defendant must: submit additional compliance reports or other

requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The FTC is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, the FTC is authorized to communicate directly with Defaulting Defendants. Defaulting Defendants must permit representatives of the FTC to interview any employee or other person affiliated with Defaulting Defendants who has agreed to such an interview. The person interviewed may have counsel present.

C. The FTC may use all other lawful means, including posing, through its representatives as Consumers, suppliers, or other individuals or entities, to Defaulting Defendants or any individual or entity affiliated with Defaulting Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the FTC's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D. Upon written request from a representative of the FTC, any consumer reporting agency must furnish consumer reports concerning Defaulting Defendants, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

**RETENTION OF JURISDICTION**

**XIV.** **IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

Dated this ____ day of _________________, 2026.

_________________________________
The Honorable Susan M. Brnovich
United States District Judge